We're glad to hear all of you this morning in the U.S. v. Wynn, Ms. Platt, glad to hear from you. Thank you, your honor. Good morning and may it please the court. Simple possession of marijuana is a grade C rather than a grade B violation under both Virginia and federal law. The recidivism provision in section 844 is not conduct within the meaning of the application note to sentencing guideline 7B1.1 and therefore is not relevant in determining the grade of supervised release violation that my client admitted to. As I wrote in the 28J letter I submitted to the court recently, a comparison to section 922G is helpful. Under United States v. Dunford, this court noted that the conduct that is criminalized when one is a felon in possession of a firearm or any of the other classes of person under 922G, the conduct that is prohibited is possession. It's not possession by a felon that is the conduct, it's simply possession of the firearm. So too, under section 844, the conduct that is criminalized is simple possession of a drug. The fact that one is a felon or a recidivist when one possesses it is not criminalized conduct, that's just a non-conduct element of the offense. Accordingly, any charge under 844 or potential charge under 844 is a misdemeanor even when one is a recidivist. Similarly, that is the issue in Carra-Cherry. The Supreme Court case- You mean that if, forget the revocation, if it was just a substantive charge, you say that he could not have been charged under B? Well, B is the revocation guideline. If Mr. Wynn had been charged in federal court, I would submit that it's highly unlikely he would be charged in federal court for testing Dury. I didn't say unlikely, I said could. If he were charged, the U.S. attorney would have discretion to file an 851 notice. I have a question. Could he? In the discretion of the U.S. attorney's office, yes. So that answer would be yes. They could file an 851 notice against Mr. Wynn. They almost never do, however. And under the fourth factor in Carra-Cherry, the actual practice in the federal courts is a relevant determination. That's the fourth reason that the Supreme Court gave in Carra-Cherry for not considering, which also discussed Section 844, the same statute at issue here, is they determined it was not an aggravated felony because it was not punishable by more than one year. And I would like to note that Mr. Carra-Cherry, like Mr. Wynn, was actually a recidivist, and they still found in Carra-Cherry that it's not. That was supervised release? That was an immigration proceeding, Your Honor. It wasn't supervised release, was it? That's right. Your argument, categorically though, is that the sentence is procedurally flawed. That's correct, Your Honor. It's procedurally unreasonable because of the conclusion that the supervised release violation was grade B rather than grade C. Yes, ma'am. It's a miscalculation of the advisory guideline range, which under Crudup, the standard is this court must determine whether the sentence is reasonable. And part of that- Plainly unreasonable. Yes, sir. The first step is reasonableness. The second step is plainly unreasonableness. But under Crudup, the court should determine simple reasonableness first before the determination of plainness. And so I would submit that this guideline calculation error is unreasonable, and under Carra-Cherry and its extension in Simmons, it is plainly unreasonable. Well, Simmons doesn't really- Excuse my voice, please. Simmons doesn't really help you, though, does it? Simmons is less helpful than- Because Simmons tells us that we have to look at who the person is being sentenced. We don't just look at the crime in the abstract, and that that was the deficit in heart. Isn't that correct? Yes. So it seems to me that Simmons is really your worst enemy in this case, isn't it, or one of your real problems? I hadn't thought of it as being an enemy, Your Honor. I agree it's less helpful than Carra-Cherry, because Mr. Simmons was not a recidivist, and Mr. Witt- Even leaving that aside, the takeaway from Simmons is that it matters who the defendant is. You can't just look at a crime in the abstract to see the wide range of punishment that anybody could get. You have to look at who this defendant is, and what his or her posture is. And so, isn't that a real problem for your analysis here? I don't think it's a problem, Judge Keenan, because Simmons is discussing the North Carolina- Which is another problem, actually, because the structured sentencing statute in North Carolina is a somewhat unusual one. I agree. In that it's not really structured. It really is one of the few statutes of its kind that makes it impossible for someone to get a sentence outside the range of the guidelines, as opposed to the statute. I agree, Your Honor. So, I think, to the extent that one thinks that Simmons is unhelpful for me, I would say it's distinguishable, because the North Carolina scheme is so unusual. And if you look just at the existence of Carra-Cherry, and just at the existence of Dunford, the language of the guideline application note, Judge Keenan says, you don't look at the criminal conviction. You look at the conduct. And that, I think, is the key word in this appeal, is defining conduct for which my client is being revoked and sentenced under revocation. And combining the word conduct in 7B1.1, Application Note 1, and this court's holding in Dunford about 922G, and looking at Carra-Cherry, which, again, discussed this statute, Section 844 of Title 21, I think those three things together, regardless of whether Simmons existed or not, mandate that this is a Grade C violation in every circumstance. I'm still having a little trouble understanding your argument that recidivism enhancements are irrelevant in classifying conduct. So under Dunford, and I've been struggling with this conceptually as well, Your Honor, which is why I decided to look at 922G, because that is a statute that criminalizes something based on the status of the defendant, either, as you know, as a felon or an illegal alien or a drug user or a misdemeanant in domestic violence cases, et cetera. So in Dunford, the defendant had, I believe, six guns and some ammunition. And he was both a felon and he was a drug user, which I think is G3, 922G3. And the government charged him with 14 counts. It was one for each gun and the ammunition, and then each gun twice, once for being a felon and once for being a drug user. And this court threw out 13 of the charges and said, no, you cannot charge someone not relevant to this case. They said, if you have six guns together, that's only one 922G. But leaving that aside, so if it were only the two counts for each one, both being a felon and being an illegal drug user, which are two of the status categories under 922G, they said, if you have a gun and you are both a felon and a drug user or an illegal alien or whatever, you've violated 922G once, only one count, because the conduct is the possession of the firearm without regard to your status. And I put a long quote in the 28-J letter I filed on Monday, I put a long quote that I think gets right to the heart of this problem from Dunford, which this court decided in 1998. Well, why is it then that this court, admittedly in unpublished opinions, has had no difficulty distinguishing Karachuri and Simmons because neither case addressed the issue of drug possession in the context of a revocation proceeding? So as Your Honor knows, this court has affirmed both grade C and grade B determinations by the court. And in honesty, this court has never actually decided this issue. It has never written at length and actually analyzed the argument that I am making today. And so even in Brown, which I cited in my brief, this court says, we're not sure about the correctness of the government's argument, that's a paraphrase, but we're not going to decide today. So this court has never actually held that facing this argument that an 844 supervised release violation is a grade B. And frankly, we would ask the court to decide now, because people are being sentenced in a disparate manner based on what their probation officer thinks. And so we would ask- It's important for you to get a decision, what if you get a decision you don't like? Obviously that- You're still happy with that? Well, Your Honor, I have to argue for Mr. Wynn. I'm not allowed to make policy arguments on the basis of a number of defendants at once, even though my office might cringe a little at that. But my duty is to argue for Mr. Wynn today. As I pointed out to the court, I'd like to note again, Mr. Wynn's release date under the 24-month sentence is in November. We filed a motion to expedite. Let me ask you this. Let me ask you this. I want to ask you, we have some law on this. If we were, and it's a little confusing to me, if we were to say there was a procedural error and we send it back and the district judge were to revoke and give exactly the same sentence, would that sentence be plainly unreasonable? I think that would depend on the reasoning that the judge gave at that time, Your Honor. I'd like to- You just would say, based on all the circumstances I give that, that wouldn't be plainly unreasonable, would it? Well, again, it would depend on how he explained it. In my hypothetical, I'm saying, based on what's in this record at this point, he deserves this. What all he said, he gave an explanation for it. What Judge Jackson said at the original sentencing on JA-51 is, I find, I can give you the exact quote. The appropriate response- I'm sorry, Judge. I think the question, though, is why couldn't the judge simply say that the criminal history is inadequately reflected in the sentence and, therefore, I sentence the same . . . I oppose the sentence I did before. District judges certainly have discretion to vary upwards. That's not the question she's asking. Why couldn't and why wouldn't that be an affirmable sentence? He did it with that and he just goes. He states some reason that the criminal history is understated. If he were then to give him this exact sentence, would that be plainly unreasonable? What the judge decide, I don't know, Your Honor, until I see the explanation that he gives. I would like to hope not, but . . . You have to accept the explanation that I just gave you, which is that, or at least for purposes of the question, if you wish to answer it, is that he gives as a reason the guidelines range inadequately reflects the severity or the significance of the defendant's criminal behavior. As I said, I think that would be within the district court's discretion, but in this case at JA page 51, what Judge Jackson actually said is, quote, the appropriate response is to sentence you within the advisory guidelines. So I would hope that where the guidelines range . . . That he wants to do it within the range or that the sentence he thinks is appropriate happens to fall within the range. I . . . We don't know, Your Honor. That's not how it was stated, Your Honor. I don't think it's possible to know that without remanding it back to Judge Jackson. What weight do you give to the policy statements? Do they have any weight whatsoever at revocation? I think they do, Your Honor. I mean . . . What weight do they have? I think it's impossible to know that. I think it's a pretty . . . No, no, no. I'm talking about under the guidelines. They aren't guidelines, are they? No. They're a policy statement, Your Honor. Right. So they were advisory before Booker. So, exactly right. So when the guidelines were absolutely mandatory and binding, the policy statements were just something to read and think about, correct? That's right, Your Honor. And so now do you think, since the guidelines authority has been diminished, do you think the policy statements authority has been increased, decreased, or it stays the same? I think it's probably the same, Your Honor. I think that now the regular guidelines and the policy statement revocation guidelines are both advisory. And . . . I know that, but . . . So you now think that the policy statements are equal to the guideline ranges? I don't see why they wouldn't be. They're both advisory. Well, so in other words, you think that the Supreme Court decisions have increased the value of the policy statements relative to the guidelines? You think that? I would say, rather, that they decreased the relevance of the regular guidelines down to where the . . . The guidelines, right? Well, sure. In a relativity sense. Sure. So you think that a Supreme Court decision that says, looking at a sentencing structure where policy statements carry almost no weight and guidelines are absolutely mandatory, you think by saying the guidelines are no longer mandatory that the policy statements are then elevated in that structure to be equal to the guidelines? I think they're equally advisory now. Both are advisory. But under this Court's recent decisions in Stalins, which I cited in my brief, and Waller, the district court still has to calculate a revocation guideline range correctly. I've read those cases. It just seemed a little bit odd to me that you have to do that because you aren't limited. You're limited. The only thing that limits, even under the mandatory guidelines sentence, mandatory guidelines limited you, but in policy statement revocation, the only thing that limits you is the statutory provisions. Regardless, Your Honor, this Court's precedent says that even revocation ranges must be calculated correctly as part of the procedural reasonableness. That takes us back to the other question we've asked. What if a judge makes a mistake on the procedural side, but he gives an explanation for why he stayed within the statutory cap? How does that get to be plainly unreasonable? If the judge, if she gives some justification.  If I may answer you quickly, Your Honor. In this case, Judge Jackson did not say, I would give you 24 months anyway. I think if he had said that, I wouldn't have appealed, frankly, but he didn't say that in this case. Thank you. Thank you very much. You reserve some time. Thank you very much. Ms. Dougherty. Good morning. May it please the Court, my name is Katie Dougherty and I represent the government. The trial court did not err when it classified Mr. Wynn's choice on six separate occasions to possess marijuana while he was on supervised release as a grade B violation of that release when he had been convicted of a prior felony drug conviction, thus his conduct was punishable by more than one year in prison under 21 U.S.C. 844A. And so in calculating the advisory applicable guideline revocation range, the district court didn't err. The defendant makes much of the Karachuri case and we believe that case is easily distinguishable. It arose in the immigration context, whether certain convictions would disqualify a lawful permanent resident for discretionary cancellation of his removal proceedings. So not drug possession in the context of revocation proceedings. And a large swath of that opinion was dedicated to discussing what the defendant was actually convicted of. The opinion discussed at length the meaning of the INA and the import of the word conviction. What was that past conviction? And so a prior conviction constituted an aggravated felony for purposes of the INA if the defendant was actually convicted of a crime punishable as a felony. Here the guidelines ask us to look at the defendant's current conduct. What is that conduct punishable by? Is it more than one year in imprisonment? If so, we're in a grade B range. And defendant has cited no case that takes their position since Karachuri was decided in 2010. And indeed the government knows of none that lends support to the argument that in the context of attempting to assign grades to violation of supervised release, the Karachuri has the effect they say it does. Although you make the distinction that Karachuri took place in the context of an immigration proceeding, Simmons did not. Simmons did not. And I believe that Simmons doesn't help Mr. Wynn much either because again they were looking at the conviction. What was Mr. Simmons convicted of? He was not convicted of a felony punishable by more than one year imprisonment. And so because of that, it couldn't serve as a predicate to enhance his maximum penalty on the Controlled Substances Act. And so again they're looking backwards. What was that conviction? What was he convicted of? The guidelines, both the guideline itself and the commentary make clear that we're looking at what is the potential punishment? What is this conduct punishable by? And the commentary says that the grade of violation doesn't depend on whether this conduct was subject of charges or subject of a conviction, but the grade is to be based on the defendant's actual conduct. And Mr. Wynn makes much of that last sentence, that the grade is based on the defendant's actual conduct. But if you put that sentence back in the context of their application note, it's asking you as the court has pointed out to consider what the person did, not what he was charged with. And the Trotter Court out of the Seventh Circuit, a case cited in both of our briefs in 2001, says this is really the district court's trying to get at a real offense rather than charged offense principles. What really did this person do? The grade's based on the actual conduct irrespective of how the government treats it. Isn't that the purpose of individualized sentencing and revocation? Yes. Isn't that what the guidelines, a whole sentencing procedure is really and revocation is supposed to be about?  It's supposed to look at an individual, that's why we have the requirement of, you can figure the guidelines and all that, but that has to account, I'm talking about in a sentencing phase, you have to account, it has to be an individualized sentence about that person. That's right, Your Honor. That's why in sentencing for convictions, not for revocation, it's not just the guidelines, it's also asking the court to look at the 18 U.S.C. 3553A factors. Who is this person? What is their history? And in this case in particular, Judge Jackson, I believe, did consider those things and in that grade B was appropriate, he talked about why Mr. Wynn in particular should be a grade B. He had six positive marijuana tests within two weeks of being released from his previous conviction. And so that Judge Jackson said at page 48 of the joint appendix that given the multiplicity of his violations here and given further that these multiple possessions are capable of being filed and considered to be felonies, the appropriate grade is a B and not C. This is a violation. And so he was looking at the whole person. He was looking at who Mr. Wynn was as a whole person. The issue, though, isn't necessarily free from doubt, though, is it? Because as Ms. Platt points out, you do have probation officers who have classified simple possession of marijuana as a grade C violation. That's right, Your Honor. There's been in this circuit grade B and grade C assigned to this particular conduct and this court has never ruled in a published opinion as to what the appropriate grade is. But several other circuits have since Karachuri and this court and Devine has recently, although in a plain error context, decided that grade B was appropriate, citing those cases with approval. And so we think that the guideline creates a really clear line here. The word punishable creates a clear, easily applicable line. If the defendant's conduct is punishable by more than one year after considering all the to the potential punishment, it's a grade B. Because that range is advisory, if it turns out the court thinks that range is too high, it can always depart downwards. The defendant makes a key concession in his reply brief. They're attempting to draw a line of recidivism as a status, but they can see that if the United States separately charges under 844 and then enhances under 851, then he would be punishable by more than one year imprisonment and it would be a grade B. So by paperworking the file, by filing a separate charge, even if that's subsequently dismissed, because it was punishable by more than one year imprisonment for a period of time, we believe Mr. Nguyen would concede that it would be a grade B. So that status of being a recidivist becomes conduct simply by filing some paperwork. And so because supervisory lease violations can be founded on acquitted conduct, the government could choose to separately charge Mr. Nguyen under 844, enhance him under an 851 notice, get the grade B violation, and then dismiss everything. And that, number one, is difficult to follow, and number two, leads to too many contingencies. I'm just wondering, counsel, if you aren't overcomplicating this, and maybe there's something I'm missing. Could you tell me whether you agree that the word conduct derives from the fact there doesn't have to be a conviction, there doesn't even have to be a charge, in order for there to be a revocation? I would agree with that, Your Honor, yes. And so it seems to me that it may begin and end there. I think it could, and simply in responding to Mr. Nguyen's concession that if it were separately charged, they would agree that it's more punishable. But I think the clear language of the application note and the clear language of the guideline, it does start in there. What is his conduct, while in supervised release, punishable as, regardless of how the government chooses, if the government chooses to charge him? What's the difference between our review for plainly unreasonable final result and some procedural reasonableness? I think the answer, Your Honor, is not much. Under CRUDUP, revocation sentences, plainly unreasonable, unreasonable, the same procedural considerations in review of original sentences, but the definition of plain is pulled in from plain error. Clear or obvious. No, it's not. It's pulled in from the statute. Yes, Your Honor. From the statute. It's pulled directly from the statute. So clear, obvious error. No, it says it's reviewed, otherwise, judgments are reviewed for, to see if they're plainly unreasonable. It comes directly from the statute. That's right. Not plain error, not . . . I mean, that's what the language for our standard review is, plainly unreasonable. Plainly unreasonable. How does that interplay with a reasonable procedural standard that's required before you get to plainly unreasonable? I think, first, determining whether it is unreasonable, whether the procedural . . . What difference does it make, I'm just asking you? For this case? For any case. I don't think much. I'm just . . . I've puzzled over that myself. I know we have that requirement to say, is it procedurally reasonable? But then, in the end, we decide whether or not the final revocation sentence is plainly unreasonable, and it's a little bit difficult to fathom how something to do with the reasonableness standard over policy statements, which really have almost no weight, how that could possibly . . . I'm just asking how that, if you have a response, how that can possibly undercut the final standard, if we think the final comments by the judge, take into account individualized sentence, and it's within the statutory limit. If we . . . How did that get to be plainly unreasonable? I would agree that the Crudup case, which discusses this, doesn't help us much in the end game. I don't think it does make much of a difference, as long as the district court engages in an individualized assessment of the person, properly calculates the range, and gives good reasons. So, you think it's a harmless error standard? What do we do? We have to do . . . I mean, the courts have now said, we have . . . I think maybe . . . I still . . . It seems to me there's still some confusion in the question I asked the other side. The policy statements have suddenly been, not by this lawyer, but have been elevated in their status. They've had no status. They had no status, really, when the guidelines were binding. Now that the guidelines aren't binding, it's hard to fathom that their status has been elevated. I think the district court . . . Your Honor mentioned, are they something to think about? I think if the court indicates he has thought about them, and states on the record, but because they're attempting to grade the seriousness of the breach of trust that the court is placing in a person by putting them on supervised release, that's why they're in broad swaths. We have A, B, and C. We don't have the intricate detail that we do in the other sentencing guidelines for convictions. I think as long as the court indicates, I've thought about what the sentencing guidelines are. I know that, but I'm just . . . You can interrupt any time you want to, but here's the thing. So what if the judge goes and gets it wrong on the A, or the B, or the C? If the judge still goes, but you know what, based on what you've done, and based on that, I think the appropriate sentence for you is X. How do we say his misreading of a thought-provoking provision, he did give it some thought, how does that make his final sentence plainly unreasonable if it, on its face, absent that policy statement consideration, is not plainly unreasonable? How does that happen? I don't have a good answer for the court. I just would say that as long as the court is giving a detailed analysis as to why the sentence is appropriate, that it couldn't be an unreasonable sentence, let alone a plainly unreasonable sentence. So you think the court could then make . . . would move . . . it could easily move to any questions about the A, B, or C question, and just, as long as the court talked . . . said, at least mentions to let us know that she has thought about those policy statements, say, I've thought about them. I don't care if it's A, B, or C. It doesn't matter to me, really. What you've done is X, Y, and Z, and based on that, my experience with you . . . by the way, this is basically what happened here. Supervision is not for you. You know, it's just not for you. To me, and I'm asking if you want to respond to this, how does that get to be plainly unreasonable? I can see that under some tests that's imposed, you could say A, B, or C calculation might not be reasonable, but for the final question, it doesn't seem to make much difference to me. Does it to you? It doesn't, Your Honor. And I really think it's as . . . this court is endeavoring to see if the district court determined the appropriate sentence for this person based on who they were, and what conduct they engaged in while in supervised release. Although the district court does have to give enough of a rationale, either procedurally or substantively for a review in court to have some sense of the thought process that led to the ultimate determination. That's right. But I think that that thought process doesn't necessarily have to be tied strictly to the grades of violations because they're so broad. The grade . . . And the district court can always say, well, even if I'm dead wrong on everything, I would have given the same sentence anyway. I believe so because they're completely advisory. And the grades are broad. It's simply, what is this conduct punishable by? Is it less than one year imprisonment? Grade C. Do you think there's any question why . . . do you think there's any question that this judge thought that supervision wasn't appropriate for this defendant? Absolutely not, Your Honor. He just said you . . . he says it, you can't do it. Some people can't, by the way. When I was a district judge, I had defendants ask me not to put them on supervised release when they violated, to revoke them and put them in jail. That's their preference because they just say, I don't want somebody to look over my shoulder and I'd just rather serve the time and then be a free person when I hit the streets. I'm completely free. But it's clear this judge knew this guy just isn't made for supervised release. And I think that's a great . . . At least that's what he said. That's right. And also, before the court was more than just the proper grade to be assigned to possession of marijuana. It was several other violations as well. And so while we're here today about what the appropriate grade is, there are many other violations alleged, were admitted, there was testimony from the probation officer. So you're right, Your Honor. He was considering more than just this limited question and I think that he would have made the same decision regardless. I don't say it's your obligation to reconcile those two standards. It just strikes me in discussion on a case like this, and we have some of them, that it is a bit of a quandary. I guess you can solve it with the alternative sentence approach that we use in guidelines. I looked at them, I may be wrong, but even if I'm wrong, here's what you do. And I think that would suffice, but it's hard for me to fathom exactly what the issue is anyway as long as ultimately it's not plainly unreasonable. I know people break it down differently. I know our court has done so. It's just a little bit problematic, it seems, when the lawyers are trying to figure out how to argue it and what the result would be. I'll make that comment for you, but it's not your obligation to resolve it. Thank you, Your Honor. If the court has no further questions, I'd ask to affirm Judge Jackson's assignment of a Grade B violation to Mr. Wynn's conduct, and thank you. All right. Thank you very much. Ms. Platt, you look eager to say something. We're glad to hear from you. Judge Shutt, I always enjoy talking with all of you. I'll pick up where I left off. We feel the same. Thank you, Judge. I'd like to pick up where I left off, Judge Duncan, which is that it's possible for a judge to say, and Judge Shutt, you indicated this as well, for the judge to say, I don't care what grade it is, you're getting 24 months. Judge Jackson didn't do that in this case. He said, I'm giving you a within-guideline sentence. As my friend conceded, and as I believe the court recognizes, one factor under both 3553A and incorporated in 3583 is a properly calculated guideline range. While it may be frustrating, they do have to be properly calculated and considered on the record, as Judge Duncan noted under Stallins and Waller and a bunch of other cases. The government started with . . . I don't know if they started, but they . . . But they don't bind the judge. Correct. It goes back to my question, and I'll ask one last time to let you finish. But if they're calculated, and the judge goes, I have looked at those, I don't really agree with them. Or just say, I've looked at them. I've thought about them. And now, this is what I'm going to do, based on these reasons. Even if the guideline range, not guideline, policy statement range was wrong, that would still be an affirmable sentence. That would be appeal-proof, Your Honor. But again, not to sound . . . That would be affirmable? Yes. Okay. I said appeal-proof, similarly. But not to beat a dead horse, but that's not what Judge Jackson did here. No, no. I'm saying . . . Okay. The other thing I'd like to note is the government has argued that Carituri and by extension Simmons should not be expanded beyond their either immigration context or North Carolina sentencing scheme context. There was a case out of, I think, North Carolina recently. It's an unpublished decision of this court in United States v. Blue. It's 2015, Westlaw, 1088934. It was issued on March 13th. In that case, the government, again, from a different U.S. Attorney's Office, argued that their cooperating witness was not a felon. He was only a misdemeanant for purposes of protecting him from impeachment under Rule 609 under Simmons. So the government argued, again, a different U.S. Attorney's Office in that case for an extension of Simmons to the federal rules of evidence and not just immigration, conviction, revocation, etc. So it's not . . . I mean, lots of people are arguing for the extension of Simmons in lots of different contexts, including the United States, when it helps them protect their cooperators. And the relevance of that is what exactly? Well, the government, in this case, is arguing that Simmons and Karachary should never be extended. But in fact, when it suits them, they, too, argue for its extension. I think it's not an open question. I think, or at least as I take it, or at least as I see it, and I don't purport to speak for the government, it's simply a question of there being distinguishable on multiple grounds, one of which is it's not a revocation proceeding. And the North Carolina structured sentencing regime is so unique. I got it, Your Honor. I rely far more on Karachary than Simmons. I agree that Simmons is basically distinguishable. You're just trying to make the point that, poor old you, the government, they take the position that seems to always be contrary to you. Well, it's more like, you know, when it helps your party, that's what you do, whether you're a defendant or the United States government. So Karachary, I think, is particularly relevant, though, because it talks about Section 844. It's talking about our statute. So yes, it's immigration and not revocation, but it's an analysis of the meaning of the statute that we are considering. It's a statutory analysis. And effectively, what they say is that without the 851 procedures, it's not a felony. They're actually determining whether it's punishable by more than a year. It's the same language at issue in 7B1.1. And the answer in Karachary is that without the protections of 851, it's not a felony. I think that directly informs the analysis, even in a revocation proceeding, Your Honor. So in conclusion, as I started with, under the application note, we're concerned with conduct. Under this Court's decision in Dunford, recidivism is not conduct. And under Karachary, without 851, 844 is a misdemeanor. So for those reasons, if the Court has no further questions, I would ask you to please reverse and remand. All right. Thank you very much. Thank you, Your Honor. In just a minute, thank you very much. I'll have the clerk recess, as we have to reconstitute panels today across the Court. So we'll reconstitute this panel. We'll stand and recess. The clerk will put us in recess. And then we'll step down and greet counsel. Dishonorable Court will take a brief recess.
judges: Dennis W. Shedd, Allyson K. Duncan, Barbara Milano Keenan